# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 8, 2002 Session

## STATE OF TENNESSEE v. KATHRYN LEE ADLER

**Direct Appeal from the Circuit Court for Fayette County**
**No. 4945     Jon Kerry Blackwood, Judge**

---

**No. W2001-00951-CCA-R3-CD - Filed February 19, 2002**

---

The Fayette County Grand Jury returned an indictment against the defendant alleging one count of aggravated child neglect and a second count of aggravated child abuse. A jury convicted the defendant of the indicted charge of aggravated child neglect and the lesser-included offense of felony child abuse. The trial court sentenced the defendant to concurrent sentences of twenty years and two years, respectively. In this appeal, the defendant alleges (1) the evidence is insufficient to support the conviction for aggravated child neglect; (2) the applicable child abuse/neglect statutes are unconstitutionally vague and overbroad; (3) the trial court erred by refusing to charge reckless endangerment as a lesser-included offense of aggravated child neglect; and (4) the defendant's sentence is excessive. After a thorough review of the record, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Anthony Helm, Bartlett, Tennessee (at trial and on appeal), and Mike Roberts, Memphis, Tennessee (at trial), for the appellant, Kathryn Lee Adler.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Colin A. Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### BACKGROUND

While the defendant was administering a bath to her two-year-old stepson, victim Cody Oneal Adler, Cody was severely burned. After discussing the injury with her husband, Larry Adler, they decided not to seek medical attention for the victim. Approximately 72 hours after infliction

of the injuries, Larry Adler was home caring for the victim when the victim experienced a seizure. Larry Adler phoned 911, and the victim was transported by helicopter to LeBonheur Hospital. Physicians treated the victim's burns and alerted social services. This trial followed, with the defendant being convicted by a jury of one count of aggravated child neglect and one count of felony child abuse.[1]

## TRIAL TESTIMONY

Lisa McDowell, an EMT, testified she was dispatched to the defendant's residence on June 25, 2000, where she saw the severely burned two-year-old victim. The paramedics then arrived and ordered that he be transported to the hospital by helicopter. On cross-examination, McDowell conceded that at the scene, Larry Adler took blame for the incident. Additionally, she stated that she checked the water temperature from the bathtub faucet, and the water was hot although the control device was in the "neutral position."

Jim Poe, an Oakland City Police Officer, arrived at the defendant's residence at approximately 2:20 p.m. on June 25th. He testified that Larry Adler told him the defendant had run the bath water, whereas the defendant said Larry Adler turned on the water for the victim's bath. He further stated they gave conflicting dates of the incident.

Mike Coleman, Larry Adler's employer, testified that Larry Adler received a phone call from the defendant while at work prior to lunch on Friday, June 23rd.

Katie Moore, the defendant's thirteen-year-old daughter, testified that although she lived with her father, she was staying at her mother's residence on the day of the incident through the weekend. She stated that while she was washing dishes, she heard crying coming from the bathroom. Moore then walked in the bathroom and saw the defendant holding the victim down while the victim struggled to exit the tub. Moore returned to the kitchen. When the defendant left the bathroom to play a movie for another child, Moore reentered the bathroom and touched the bath water, which felt "cold."

While finishing the dishes, Moore heard crying, went back in the bathroom, and saw the defendant holding the victim up in a towel. Moore placed her hand in the water, which felt "hot." The victim's skin was red and was "peeling off." The defendant called Larry Adler and when Moore was placed on the phone, she "was crying, and [she] told him that [the defendant] had done it on purpose." Moore did not see the defendant call a pharmacy. Moore further testified the victim played with toys; he would crawl on his knees and unburned hand; he was fed; his burns were treated everyday with "some spray." When Moore's uncle and aunt visited on the following Saturday night,

[1]Larry Adler was tried separately and convicted of misdemeanor reckless endangerment. *See* State v. Alan Lawrence Adler, No. W2001-00178-CCA-R3-CD, 2001 WL 1011461, at *1 (Tenn. Crim. App. Aug. 29, 2001, at Jackson), *perm. to app. pending*.

the victim remained in bed the entire time. Moore further testified that the victim's skin was "brown" on Sunday, and the victim "lay[ed] around and moan[ed] a lot that weekend."

Dr. Karen Laken, a pediatrician, testified she observed the victim at LeBonheur Hospital. Dr. Laken stated the victim had "very, very extremely burned areas on his lower extremities . . . feet . . . left hand . . . buttocks . . . and the bottom part of his scrotum." She stated the burns were "textbook examples or typical examples of immersion injuries into very hot liquid" which were "classic burns that are non-accidental or abusive." Dr. Laken further testified that these types of injuries are often a result of a caregiver becoming upset when children use the restroom on themselves during potty-training. Dr. Laken opined the burns were non-accidental because both feet were placed in the water at the same time; there were no "splash burns;" and the left side of the victim's buttocks was not burned, indicating the victim was restrained in the tub by pressure to his shoulder, thus insulating his left buttocks against the tub. Dr. Laken opined the burns were "extremely painful," and the failure to seek prompt medical attention placed the victim at a substantial risk of serous bodily injury or death.

Dr. Phillip Carl Smith, an ER physician, testified for the defense. He examined the victim's medical records and opined the injuries were consistent with child abuse, but it was also possible that they resulted from an accident. Dr. Smith conceded the burns would have been "extremely painful;" it would have been obvious to the caregiver that there was something wrong with the victim; and the victim should have been taken to the hospital "as soon as possible." Dr. Smith corroborated Dr. Laken's conclusion that the injuries were consistent with a person being held down in hot liquid.

Larry Boone, the defendant's father, testified he went to the residence one week after the injury and saw that the "joystick-type" faucet was "very loose." When he informed the landlord that he was going to hire a plumber to check the diversion rate of the hot and cold water and check the hot water heater's controls, he was denied entry.

Dr. Fred Steinberg, a forensic and clinical psychologist, performed tests on the defendant and opined she was not abusive and did not intentionally abuse nor intentionally neglect the victim.

Joe Moore, the defendant's former husband, stated he never saw an indication that the defendant would injure a child.

Kristy Boone, the defendant's sister-in-law, testified she visited the defendant's home on the weekend of the injury, and the victim appeared normal. She stated the victim was quiet while watching TV, and he was covered with a blanket – only exposing his head and one hand. Boone believed the victim may have been sick because he was in a blanket, and when she asked if the victim felt well, the defendant replied that he had a "little fever."

The defendant testified in her own defense. She stated that on Thursday, June 22nd, not Friday, June 23rd, while Larry Adler was at work, she was feeding the victim breakfast. While eating, the victim urinated in his pants, so she went to the bathroom, turned the faucet to "medium," checked the water temperature, and plugged the drain. After the victim finished eating his breakfast,

she took him to the bathroom, removed his clothing, placed him in the tub, and left the water running. She then took his soiled clothing to the washroom, and she placed it in the washing machine which had its temperature control set on "cold." When she heard the victim crying in the bathtub, she returned to the bathroom, and after she gave him a bath toy, he quit crying. The defendant again left the toddler alone in the tub and went to the bedroom. There, she laid out clothing for him to wear and placed a videotape into the VCR for another child. She heard the victim crying again, returned to the bathroom, and saw the victim standing in the tub. She then grabbed his arms and "sat him down in the tub." The defendant stated she struggled with the victim, which was normal, and she was unaware of the water's extremely hot temperature until her hand touched the water.

The defendant stated she was "hysterical," immediately removed him from the tub, examined his burns, and wrapped him in a towel. She then called Larry Adler at work and described the victim's injuries. She conceded that his burns appeared "pink" in color, and a piece of "skin was hanging off his feet." After they agreed that she should call a pharmacy, she called directory assistance and was connected to a pharmacist.[2] She testified she described the victim's injuries, and the pharmacist instructed her to administer Solarcaine or Bactine, A & D ointment, peroxide, tepid water, and Tylenol for pain. She said the pharmacist further warned her if the victim ran a fever, it was an indication of infection. The defendant stated she applied the salves immediately after concluding her conversation with the pharmacist.

When asked why she did not call 911, the defendant stated:

> I had spoke [sic] with my husband, and we discussed it, and we were more afraid that Larry's ex-wife would take the boys away from us due to the fact that I ran the tub, the water, and we were scared that also that they were going to go back to a gang member life being in an unstable home, a lot of drugs around, and we were just scared for them.

The defendant further testified she followed the pharmacist's instructions, thought there was no need to phone 911, and believed the victim's conditions were improving. On Sunday, June 25th, she checked the condition of the victim and noticed he had a low-grade fever. She said she administered Tylenol, and the victim's temperature tested "normal" forty-five minutes later. The defendant and Katie Moore drove to Memphis to shop, leaving the victim with Larry Adler. While shopping, she received a "911 beep from Larry." She then called home, and Larry Adler told her that the victim was going to be airlifted to the hospital.

When the defendant arrived home, the police were present. The defendant conceded she told officers that Larry Adler ran the bath water, and explained that she lied because she feared they would lose custody. She further conceded she lied when she informed officers that "Larry [Adler]

---

[2]No pharmacist testified at trial. The defendant testified she called "Information" and asked for "any Walgreens Pharmacy" and "pressed one" for an automatic connection. She stated she did not know which Walgreens location she called.

stated that [the victim] had jumped in the tub." She further stated she informed the pharmacist that the victim had been burned but did not inform the pharmacist of the specifics of his injuries.

Robert Hutton, an attorney who represented Larry Adler, was called by the state in rebuttal to Kristy Boone's testimony. Hutton testified he interviewed Boone during the course of his representation of Larry Adler, and Boone stated that on her weekend visit she observed "something wrong with the [victim's] hand," and the defendant blamed the victim's biological mother.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence is insufficient to sustain her conviction for aggravated child neglect. We respectfully disagree.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App. 1996).

This court does not reweigh or reevaluate the evidence, State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). This court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

### B. Analysis

The jury concluded the defendant was guilty of aggravated child neglect pursuant to Tennessee Code Annotated section 39-15-402 (Supp. 2000). Our code provides that "[a]ny person who knowingly, other than by accidental means, treats a child . . . in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare" is guilty of child abuse or child neglect. Tenn. Code Ann. § 39-15-401(a) (Supp. 2000). It is a Class A misdemeanor unless the child is age six or less, in which event it is a Class D felony. *Id.*

Furthermore, the code provides that "[a] person commits the offense of aggravated child abuse or aggravated child neglect who commits the offense of child abuse or neglect as defined in § 39-15-401 and . . . [t]he act of abuse or neglect results in serious bodily injury to the child." Tenn. Code Ann. § 39-15-402(a)(1) (Supp. 2000). This offense is a Class B felony unless the child is age six or less, in which event the offense is a Class A felony. *Id.* § (b). "Serious bodily injury" is defined, in part, as "[a] substantial risk of death" or "[e]xtreme physical pain." Tenn. Code Ann. § 39-11-106(a)(34)(A), (C).

The defendant testified that the victim was burned so badly he had skin "peeling off his feet." She further testified she did not phone 911 because, after discussing it with her husband, she feared losing custody of the children. Viewing the evidence in a light most favorable to the state, as we must, this establishes that the defendant knowingly decided not to seek medical attention because of custody considerations; thus, this establishes knowing neglect.

Furthermore, Dr. Laken testified that the defendant's failure to take the victim to the hospital placed him at a substantial risk of serous bodily injury or death. Dr. Laken estimated the victim suffered burns on 15 percent of his body, and "[a]ny child his age who has probably greater than 10 percent of a body surface area that is burned is automatically classified in the critical category. . . ." Dr. Laken further opined that the victim's injuries were "extremely painful," and his pain could have been eased by medication if he had been taken to the hospital. Dr. Laken further testified the victim underwent skin grafts which left permanent scars and a "protracted disfigurement."

Additionally, Dr. Smith, a defense witness, testified the victim's injuries were "extremely painful;" the victim could have been given morphine to control the pain; it would have been obvious to the defendant that there was something wrong with the victim; and the victim should have been taken to the hospital "as soon as possible."

Although the testimony of Dr. Laken and Dr. Smith does not establish that the victim's "protracted disfigurement" was a result of the convicted offense of aggravated child neglect rather than child abuse, it clearly establishes that the victim was subjected to "a substantial risk of death" and "extreme physical pain" due to the defendant's neglecting to seek prompt medical attention. Thus, the element of "[s]erious bodily injury" was established. *See* Tenn. Code Ann. § 39-11-106(a)(34)(A), (C). Furthermore, it is undisputed that the child was less than six years of age. *See* Tenn. Code Ann. § 39-15-402(b). Accordingly, we conclude the evidence sufficiently established that the defendant knowingly neglected the victim, resulting in "serious bodily injury" to the two-year-old toddler. The evidence is sufficient to support the guilty verdict for aggravated child neglect.

## II. CHILD ABUSE/NEGLECT STATUTES

The defendant asserts Tennessee Code Annotated sections 39-15-101 and 102 are unconstitutionally vague and overbroad because the words "injury," "neglect," and "welfare" are not defined. This court has rejected this argument. *See* State v. Tyaneshia Turner and Jonathan Webster,

No. W1999-00530-CCA-R3-CD, __ WL __, 2000 Tenn. Crim. App. LEXIS 487 (Tenn Crim. App. June 21, 2000, at Jackson), *perm. to app. denied* (Tenn. 2001) (holding "neglect" and "injury" are not unconstitutionally vague); State v. Kena Hodges, No. 01C01-9804-CR-00170, 1999 WL 618861, at *11-12 (Tenn. Crim. App. Aug. 11, 1999, at Nashville), *perm. to app. denied* (Tenn. 2000) (holding "inflict injury" is not unconstitutionally vague); State v. Cynthia Denise Smith, C.C.A. No. 1153, 1990 WL 134934, at *3 (Tenn. Crim. App. Sept. 20, 1990, at Knoxville) (holding "adversely affect the child's health and welfare" is not unconstitutionally vague). We adhere to these holdings.

In support of the defendant's position, she argues a plethora of hypothetical situations where the statute might be vague *as applied*. However, she does not contest the applicability of the aggravated child abuse statute to her conduct. A party who engages in conduct clearly proscribed by the statute may not complain of its vagueness when applied to others. State v. Burkhart, 58 S.W.3d 694, 699 (Tenn. 2001). In the absense of facial vagueness, we will not consider all possible contingencies of attempted prosecution under a criminal statute. *Id.* We conclude the defendant's conduct toward the victim involves no constitutionally protected activity, so her overbreadth challenge fails. Further, the statute is neither unconstitutionally vague as applied to her conduct, nor is it facially vague. Accordingly, this issue is without merit.


## III.  LESSER-INCLUDED OFFENSE

The defendant contends the trial court erroneously refused to charge misdemeanor reckless endangerment as a lesser-included offense of aggravated child neglect. We conclude the failure to charge misdemeanor reckless endangerment was harmless error.

### A.  Burns Requirements

Our supreme court has recently held that misdemeanor reckless endangerment is a lesser-included offense of aggravated child abuse. *See* State v. Honeycutt, 54 S.W.3d 762, 772 (Tenn. 2001). In its brief and at oral argument, the state conceded that the reasoning in Honeycutt would apply in the case *sub judice*, making reckless endangerment a lesser-included offense of aggravated child neglect. We agree.

However, our analysis does not conclude there. As recently stated by the Tennessee Supreme Court in State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001), the charge must be justified by the evidence. *See* State v. Burns, 6 S.W.3d 453, 467 (Tenn. 1999). This step requires that we determine (1) whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense, and (2) whether the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Ely, 48 S.W.3d at 722; Burns, 6 S.W.3d at 469. The evidence must be viewed liberally in a light favoring the existence of the lesser-included offense without making any judgments as to credibility of the evidence. Burns, 6 S.W.3d at 469.

### B.  Basis for Charge

Tennessee Code Annotated section 39-13-103(a) provides that "[a] person commits [reckless endangerment] who recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Dr. Laken testified the delay in seeking medical attention placed the victim at a "substantial risk of serious bodily injury or death." We conclude reasonable minds could have accepted this lesser-included offense, and the evidence would have been sufficient to sustain such a conviction.

## C. Harmless Error Doctrine

The trial court's failure to instruct a lesser-included offense is harmless when the jury finds the defendant guilty of the greater offense to the exclusion of the immediately lesser-included offense, which was a greater offense than the one requested. State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998). The sequential jury instructions charged aggravated child neglect, attempted aggravated child neglect, felony child neglect, and attempted felony child neglect. The jury found the defendant guilty of the charged offense of aggravated child neglect to the exclusion of the other charged lesser-included offenses. Any error in declining to give instructions on misdemeanor reckless endangerment was harmless beyond a reasonable doubt. This issue is without merit.

## IV. SENTENCING

The defendant contends the trial court imposed an excessive sentence. The presumptive sentence for the Class A felony of aggravated child neglect is the midpoint of the range, and the presumptive sentence for the Class D felony of child abuse is the minimum within the range. *See* Tenn. Code Ann. § 40-35-210(c). For a Range I standard offender, the sentencing range for aggravated child neglect is fifteen to twenty-five years, and the sentencing range for felony child abuse is two to four years. *See* Tenn. Code Ann. § 40-35-112(a)(1), (4). Following a sentencing hearing, the trial court sentenced the defendant to concurrent sentences of twenty years for aggravated child neglect and two years for child abuse, the presumptive sentence for each offense.

Although the defendant claims the length of her sentence is excessive, she has neglected to preserve a record of the sentencing hearing. It is the duty of the accused to provide a record which conveys a fair, accurate, and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see* State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). This issue is waived.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____

-8-

JOE G. RILEY, JUDGE