# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 27, 2016

## STATE OF TENNESSEE v. WILLIAM JERMAINE STRIPLING

### Appeal from the Criminal Court for Knox County
### No. 102315      G. Scott Green, Judge

_____

### No. E2015-01554-CCA-R3-CD – Filed June 16, 2016

_____

William Jermaine Stripling ("the Defendant") was convicted of two counts of sale of less than .5 grams of cocaine in a drug-free zone and two counts of delivery of less than .5 grams of cocaine in a drug-free zone. His convictions merged, leaving him with one conviction for sale of less than .5 grams of cocaine in a drug-free zone. In a bifurcated proceeding, the Defendant's sentence was enhanced pursuant to the criminal gang offenses enhancement statute, Tennessee Code Annotated section 40-35-121. On appeal, the Defendant argues that the criminal gang offenses enhancement statute is facially unconstitutional. Specifically, the Defendant contends that the criminal gang offenses enhancement statute violates due process because it is overly broad and void for vagueness and that it violates his First Amendment right to free association and expression. Additionally, the Defendant argues there was insufficient evidence to support his convictions. Upon review, we conclude that the criminal gang offenses enhancement statute is unconstitutional because it violates substantive due process. However, we hold that the evidence was sufficient to support the Defendant's convictions of sale and delivery of less than .5 grams of cocaine within a drug-free zone. The judgments of the trial court are affirmed in part, modified in part, and reversed in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Modified in Part, Reversed in Part, and Remanded

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined, and JAMES CURWOOD WITT, JR., filed a separate concurring opinion.

Jonathan S. Wood, Knoxville, Tennessee, for the appellant, William Stripling.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Charme Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**I. Factual and Procedural Background**

a. Guilt Phase

The Defendant was charged, via presentment, with one count of sale of less than .5 grams of cocaine in a drug-free zone (school), one count of delivery of less than .5 grams of cocaine in a drug-free zone (school), one count of sale of less than .5 grams of cocaine in a drug-free zone (daycare center), and one count of delivery of less than .5 grams of cocaine in a drug-free zone (daycare center), (Counts 1-4). Additionally, Count 5 of the indictment alleged that the Defendant was a gang member and gave the Defendant notice that the State sought enhanced punishment under the criminal gang offenses enhancement statute, specifically Tennessee Code Annotated sections 40-35-121(b), (g), and (h)(1)(A).

At trial, Knoxville Police Department Officer Terry Pate testified that he was conducting an undercover patrol of the "Magnolia area" on August 26, 2010. Officer Pate was driving a pickup truck with a four-wheeler in the back, and he parked his truck in front of the "Gas House" on Magnolia Avenue. The Defendant approached Officer Pate's truck and made a comment about the four-wheeler, and Officer Pate informed the Defendant that the four-wheeler was inoperable. Officer Pate then told the Defendant that he was "looking for something." The Defendant told Officer Pate to "pull around onto Linden"—a nearby street—and wait. Officer Pate complied.

After Officer Pate moved his truck, the Defendant again approached the vehicle, and Officer Pate told him that he was looking for "a [twenty]." Officer Pate explained that looking for "a [twenty]" meant that he was looking for twenty dollars' worth of crack cocaine. The Defendant reached into his pants, withdrew a plastic bag containing crack cocaine, and handed Officer Pate "a piece of it." "Almost simultaneously" with the Defendant's giving Officer Pate the drug, Officer Pate gave the Defendant a twenty dollar bill. The Defendant told Officer Pate to be careful and made a few more comments about the four-wheeler, and Officer Pate then drove away.

Officer Pate drove to another location where he met Officer Jinks.[1] He sealed the substance he received from the Defendant in a plastic bag and gave the bag to Officer

---

[1] Officer Jinks's first name is not included in the record.

Jinks. Later, Officer Pate conducted a field test of the substance, which tested positive for "cocaine base." Officer Pate testified that the transaction with the Defendant took place within 1,000 feet of Knoxville Baptist Christian School and Kidz Inkorporated Preschool.

Officer Pate noted that his truck was equipped with a hidden camera that was pointed at the driver's side door and that it captured video of the transaction with the Defendant. However, there was no audio recording of the transaction. The video was played for the jury. The video showed a male, whom Officer Pate identified as the Defendant, approach the driver's side window. Officer Pate spoke to the Defendant and then drove to another location and parked his truck. Shortly thereafter, the Defendant again approached Officer Pate's car and looked into the back of Officer Pate's truck. The Defendant then placed his hand inside Officer Pate's truck, and Officer Pate drove away. Officer Pate testified that the video captured the transaction between himself and the Defendant.

Special Agent Ashley Cummings of the Tennessee Bureau of Investigation testified that she received a sealed envelope with a "rock-like substance" in connection with this case. Her test of the "rock-like substance" revealed that it contained .08 grams of cocaine base. She stated the substance is commonly referred to as crack or crack cocaine.

Robert Evans, an employee of Knoxville Baptist Christian School, testified that the school was located on Magnolia Avenue and that it was in existence on the date of the offense. Erica Williams, an employee of the Department of Human Services, Childcare and Adult Care Licensing, testified that Kidz Inkorporated Preschool was located on East Magnolia and that it was in existence on the date of the offense. Donna Roach of the Knoxville Utility Board Geographic Information Systems testified that the transaction between the Defendant and Officer Pate took place within 1,000 feet of Knoxville Baptist Christian School and Kidz Inkorporated Preschool.

The Defendant admitted that he was the person who approached Officer Pate's truck on the video. The Defendant recalled that he saw Officer Pate's truck pull into the parking lot and that Officer Pate "flagged [the Defendant] down." Officer Pate told the Defendant that he needed twenty dollars' worth of "crack." The Defendant told Officer Pate that he had spent "the last [five dollars] he had" on cocaine for his personal use. The Defendant also directed Officer Pate "to pull around back" so that his truck was not blocking access to the parking lot. Once Officer Pate moved his truck, the Defendant approached him again and gave Officer Pate the drugs he had previously purchased for himself and told Officer Pate to "go ahead and get started off of what I have." Officer Pate then gave the Defendant twenty dollars and told the Defendant to go find enough crack cocaine for the both of them. Officer Pate then drove away, and the Defendant

understood that he would return fifteen minutes later so that they could get high together. However, Officer Pate never returned, so the Defendant spent the twenty dollars "on cigarettes, alcohol[,] and enough crack to get [him] through the night." The Defendant said he did not know whether the substance he gave Officer Pate "was real or not." The Defendant said he did not intend to sell drugs to Officer Pate.

On cross-examination, the Defendant denied asking Officer Pate about the four-wheeler. The Defendant also stated that he had the drugs in his hand, and he denied reaching into his pants to retrieve the drugs. The Defendant agreed that he handed drugs to Officer Pate, but he did not agree that he delivered drugs to Officer Pate. Further, the Defendant agreed that Officer Pate gave him money, but he said that it was not immediately after he handed Officer Pate the drugs.

The State called Officer Pate as a rebuttal witness. Officer Pate said he never discussed smoking crack cocaine with the Defendant. Officer Pate further stated that the Defendant pulled the drugs from "the inside of the front of his pants" before giving it to Officer Pate. Officer Pate observed that the Defendant had a bag containing more than one piece of crack cocaine in his pants but that the Defendant only gave Officer Pate one piece of crack cocaine. Based on Officer Pate's experience, he understood that possessing that amount of drugs to be consistent with someone who sells drugs. Officer Pate explained that someone addicted to crack cocaine would not keep a reserve on hand but, instead, would use the drug as soon as they obtained it. Officer Pate also testified that the exchange of drugs and money was "almost together"; there was no delay between the Defendant's giving Officer Pate the drugs and the officer's paying the Defendant.

The jury convicted the Defendant as charged in the first four counts of the indictment. The trial court later merged Counts 2, 3, and 4 with Count 1.

### b. Gang Enhancement Proceedings

In a bifurcated proceeding, Detective Tom Walker, of the Knox County Sheriff's Office ("KCSO"), testified that he was a member of the KCSO's Gang Intelligence Unit, which keeps track of gang members in the "east Tennessee area." Detective Walker was accepted as an expert in gang identification. Detective Walker stated that the Gang Intelligence Unit utilized a "check-off sheet" to determine whether an individual was a gang member. Such considerations included whether the individual: admitted to gang membership, was certified as a gang member from another law enforcement agency, wore specific gang tattoos, had an ongoing association with known gang members, showed gang-specific hand signs, wore gang colors, or displayed gang graffiti in his jail cell. Each factor was given a point value, and if an individual achieved ten points on the check list, he was considered a gang member.

Detective Walker explained that the Rolling 60s Crips was a splinter group that broke off from the West Side Crips in Los Angeles, California. The group had been present in Knoxville for approximately ten years, and the KCSO's Gang Intelligence Unit had identified forty-two members of the group in the Knoxville area. Antwain Holliday, Larry Winton, and Thomas Agnew were identified as members of the Rolling 60s Crips. Further, Detective Walker stated that the Defendant was identified as a member of the Rolling 60s Crips due to the fact that Rolling 60s Crips graffiti was found inside his jail cell; he had a book on the history of the Rolling 60s Crips in his cell; he had written letters to and received letters from other known gang members; he had been "arrested on a violent crime"; he had "a weapons arrest"; and he had a gang-specific tattoo. Detective Walker also noted that the Defendant had admitted to gang involvement in the letters that he sent from jail. Detective Walker interpreted the graffiti found in the Defendant's cell to say "Rich Rollin for Life," meaning the Defendant was going to be a member of the Rolling 60s Crips for life. Additionally, the graffiti said, "OGC," or "Original Gangster Crips," meaning the Defendant claimed to be one of the original gang members in the Knoxville branch of the Rolling 60s Crips.

On cross-examination, Detective Walker acknowledged that inmates were housed in two-man cells. However, he explained that, when officers search an inmate's cell, they only "count" items found in the inmate's personal property box as evidence that the inmate is a member of a gang—they do not use items found lose in the cell to calculate the points against an inmate. Detective Walker noted that the inmate's cellmate could ostensibly gain access to an inmate's box, but he opined that such occurrence was "pretty slim" because the inmates were possessive of their property boxes. Detective Walker said he was "[ninety-nine] percent" sure the graffiti found in the Defendant's cell belonged to the Defendant. Detective Walker also noted that the Defendant's tattoo said "L.A.," which Detective Walker understood to mean either "Linden Avenue" or "Los Angeles." Both locations were associated with the Rolling 60s Crips. Detective Walker confirmed that the Defendant had not admitted to being a gang member or to having any affiliation with Antwain Holliday, Larry Winton, or Thomas Agnew.

Knox County Criminal Court Clerk, Richard Major, testified that he had certified copies of the following judgments: Larry Winton for felony sale of cocaine (offense date October 7, 2008); Thomas Agnew for six separate convictions for felony sale of cocaine (offense dates ranging from August 2, 2007, to October 7, 2008); Antwain Holliday for three counts of felony sale of cocaine (offense dates August 2, 2007, and August 20, 2007) and one count of felony attempted sale of cocaine (offense date August 10, 2007). The judgments of conviction were entered into evidence.

The Defendant testified that he got his "L.A." tattoo when he was twelve years old and that it symbolized "Linden Avenue" because he had always lived on that street. The

Defendant further stated that he did not have a lid on his personal property box in his cell, and he claimed that the documents with the graffiti did not belong to him. The Defendant opined that another inmate could have sent a letter using an envelope with the Defendant's identification number and signing the Defendant's name so that the contents of the letter would have been attributed to the Defendant. The Defendant denied being a gang member. On cross-examination, the Defendant denied writing any of the letters that were introduced during the instant proceeding. The Defendant said that, even though he had lived on Linden Avenue his entire life, he first heard of the Crips when he went to jail.

After deliberation, the jury found that the gang enhancement statute applied to the Defendant. Specifically, the jury found that the Defendant was guilty of a criminal gang offense. Further, the jury found that the Defendant was a criminal gang member because (1) the Defendant resided in or frequented a particular criminal gang's area, adopted their style or dress, their use of hand signs or their tattoos, and associated with known criminal gang members; and (2) the Defendant was identified as a criminal gang member by physical evidence such as photographs or other documentation. Finally, the jury found that the Defendant was not a leader in the criminal gang.

### c. Sentencing Hearing

At the subsequent sentencing hearing, the Defendant argued that the gang enhancement statute was unconstitutional on the grounds that it violated due process because it was overly broad and void for vagueness and that it violated the Defendant's First Amendment right to free association. The trial court found that the statute was constitutional, stating that it did not punish mere association with a gang. Instead, the trial court reasoned that the statute enhanced punishment for offenses committed by gang members in association with other gang members. The trial court sentenced the Defendant to eighteen years' incarceration, the first fifteen years to be served at one hundred percent and the remaining three years to be served at thirty percent. The Defendant's motion for new trial was denied, and this timely appeal followed.

## II. Analysis

*Constitutionality of Criminal Gang Offenses Enhancement Statute*

### a. Waiver

Preliminarily, we note that there is no indication that the Defendant filed a pre-trial motion challenging the constitutionality of Tennessee Code Annotated section 40-35-121. According to the record, the Defendant raised the issue for the first time at the sentencing hearing, and he later raised the issue in his motion for new trial. This court has

previously stated that the failure to raise a constitutional challenge to a statute in a pre-trial motion results in a waiver of the issue on appeal. State v. Rhoden, 739 S.W.2d 6, 10 (Tenn. Crim. App. 1987); see also Tenn. R. Crim. P. 16(b)(2); State v. Farmer, 675 S.W.2d 212, 214 (Tenn. Crim. App. 1984). However, we also note that the State did not raise the issue of waiver when the Defendant argued the constitutionality of the statute at the sentencing hearing, and the State does not argue waiver on appeal. Accordingly, we will address the merits of the Defendant's claim. See State v. Smith, 48 S.W.3d 159, 162 n.1 (Tenn. Crim. App. 2000), perm. app. denied (Tenn. Dec. 27, 2000).

### b. Due Process

The Defendant argues that Tennessee Code Annotated section 40-35-121 is overbroad, and facially unconstitutional, because the statute requires no connection between the underlying crime and alleged gang membership in order for the enhancement to apply. He further asserts that the statute is void for vagueness because it fails to provide adequate notice of what conduct is prohibited by the statute. The State argues that the statute is constitutional because the sentencing enhancement can only apply to "criminal gang offenses" as defined in Tennessee Code Annotated section 40-35-121(a)(3).

Under Tennessee Code Annotated section 40-35-121(b), "[a] criminal gang offense committed by a defendant who was a criminal gang member at the time of the offense shall be punished one (1) classification higher than the classification established by the specific statute creating the offense committed." Tenn. Code Ann. § 40-35-121(b) (2014). As applicable to this case, "criminal gang offense" is defined as follows:

A criminal offense committed prior to July 1, 2013 that:

(i) During the perpetration of which the defendant knowingly causes or threatens to cause death or bodily injury to another person or persons and specifically includes rape of a child, aggravated rape and rape; or

(ii) Results, or was intended to result, in the defendant's receiving income, benefit, property, money or anything of value from the illegal sale, delivery or manufacture of a controlled substance, controlled substance analogue, or firearm[.]

Tenn. Code Ann. § 40-35-121(a)(3)(A) (2014). As defined in the statute,

"Criminal gang" means a formal or informal ongoing organization, association or group consisting of three (3) or more persons that has: (A) [a]s one (1) of its activities the commission of criminal acts; and (B) [t]wo

(2) or more members who, individually or collectively, engage in or have engaged in a pattern of criminal gang activity.

Tenn. Code Ann. § 40-35-121(a)(1) (2014). The statute defines "pattern of criminal gang activity" as "prior convictions for the commission or attempted commission of, facilitation of, solicitation of, or conspiracy to commit" the following:

(i) Two (2) or more criminal gang offenses that are classified as felonies; or

(ii) Three (3) or more criminal gang offenses that are classified as misdemeanors; or

(iii) One (1) or more criminal gang offenses that are classified as felonies and two (2) or more criminal gang offenses that are classified as misdemeanors; and

(iv) The criminal gang offenses are committed on separate occasions; and

(v) The criminal gang offenses are committed within a five-year period[.]

Tenn. Code Ann. § 40-35-121(a)(4)(A) (2014).

A "criminal gang member" is defined as follows:

[A] person who is a member of a criminal gang, as defined in subdivision (a)(1), who meets two (2) or more of the following criteria:

(A) Admits to criminal gang involvement;

(B) Is identified as a criminal gang member by a parent or guardian;

(C) Is identified as a criminal gang member by a documented reliable informant;

(D) Resides in or frequents a particular gang's area, adopts their style or dress, their use of hand signs or their tattoos and associates with known criminal gang members;

(E) Is identified as a criminal gang member by an informant or previously untested reliability and the identification is corroborated by independent information;

- 8 -

(F) Has been arrested more than once in the company of identified criminal gang members for offenses that are consistent with usual criminal gang activity.

(G) Is identified as a criminal gang member by physical evidence such as photographs or other documentation[.]

Tenn. Code Ann. § 40-35-121(a)(2) (2014).

Our courts are charged with upholding the constitutionality of statutes whenever possible. State v. Pickett, 211 S.W.3d 696, 700 (Tenn. 2007). When analyzing the constitutionality of a statute, we begin with the presumption that the statute is constitutional. Id. (citing Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003)). The constitutional interpretation of a statute is a question of law which we review de novo. Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009).

We first address the Defendant's assertion that the statute is vague. "A statute may be void for vagueness if it is not 'sufficiently precise to put an individual on notice of prohibited activities.'" State v. Burkhart, 58 S.W.3d 694, 697 (Tenn. 2001) (quoting State v. Wilkins, 655 S.W.2d 914, 915 (Tenn. 1983)). Criminal statutes are construed according to the fair import of their terms. Id. "Due process requires that a statute provide 'fair warning' and prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed." Id.

As stated above, section 40-35-121(b) provides that "[a] criminal gang offense committed by a defendant who is a criminal gang member at the time of the offense shall be punished by one (1) classification higher than the classification established by the specific statute creating the offense committed." Pertinent to this case, a "criminal gang offense" is defined as "[a] criminal offense committed prior to July 1, 2013 that . . . [r]esults, or was intended to result, in the defendant's receiving income, benefit, property, money or anything of value from the illegal sale, delivery, or manufacture of a controlled substance, controlled substance analogue, or firearm[.]" Tenn. Code Ann. § 40-35-121(a)(3)(A) (2014). The terms used in the statute are defined in the code or are capable of ready understanding. A "criminal offense" is conduct that "is defined as an offense by statute, municipal ordinance, or rule authorized by and lawfully adopted under a statute." Tenn. Code Ann. § 39-11-102(a) (2014). The remaining terms of the statute are defined elsewhere in the code. See Tenn. Code Ann. §§ 39-11-106(a)(1) (defining "benefit"), -106(a)(11) (defining "firearm"), -106(a)(28) (defining "property"); see also Tenn. Code Ann. §§ 39-17-402(4) (defining "controlled substance"), -402(6) (defining "deliver"), -402(15) (defining "manufacture"); Tenn. Code Ann. § 39-17-454(a) (defining "controlled

substance analogue"). "Income" is not defined in the criminal code, but the term is capable of ready understanding.

Upon review, we conclude that the statute is sufficiently precise to provide fair warning as to conduct that is covered by the statute. In short, the statute applies to a gang member who sells, delivers, or manufactures a controlled substance and where the transaction results, or was intended to result, in the defendant's receiving some sort of compensation for that service. A person of common intelligence would be able to understand the plain meaning of the statute, and it is not void for vagueness.

Next the Defendant argues that the statute is unconstitutionally overbroad because it requires no nexus between the criminal activity and the Defendant's gang membership in order for the enhancement to apply. The Fourteenth Amendment to the United States Constitution guarantees that no "State [shall] deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. Article I, section 8 of the Tennessee Constitution "has consistently been interpreted as conferring identical due process protections as its federal counterparts." Mansell v. Bridgestone Firestone North American Tire, LLC, 417 S.W.3d 393, 407 (Tenn. 2013). Due process encompasses both procedural and substantive protections. Id. "The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." Id. (quoting Lynch v. City of Jellico, 205 S.W.3d 384, 391 (Tenn. 2006)) (internal quotation marks omitted). In contrast, "substantive due process bars oppressive government action regardless of the fairness of the procedures used to implement the action." Id. at 409. "Unless a fundamental right is involved, the test for determining whether a statute comports with substantive due process is whether the legislation bears 'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" Newton v. Cox, 878 S.W.2d 105, 110 (Tenn. 1994) (quoting Nebbia v. New York, 291 U.S. 502, 537 (1934)).

This court has previously examined the constitutionality of Tennessee Code Annotated section 40-35-121 in State v. Devonte Bonds, No. E2014-00495-CCA-R3-CD, 2016 WL 1403286 (Tenn. Crim. App. Apr. 7, 2016). In that case, this court noted that the General Assembly clearly had the authority to enact laws proscribing the harmful effect of criminal gangs. Devonte Bonds, 2016 WL 1403286, at *25. However, the court concluded that Tennessee Code Annotated section 40-35-121(b) was not reasonably related to that purpose and therefore did not satisfy the requirements of substantive due process. Id. As stated by this court,

> . . . It simply cannot be maintained that a statute ostensibly intended to deter gang-related criminal conduct through enhanced sentencing is reasonably related to that purpose where the statute in question is

completely devoid of language requiring that the underlying offense be somehow gang-related before the sentencing enhancement is applied. Without a nexus requirement, Section 40-35-121(b) directly advances only the objective of harsher treatment of criminal offenders who also happen to members of a criminal gang. Because Section 40-35-121(b) fails to even obtusely target gang-related criminal activity, it lacks a reasonable relationship to achieving the legitimate legislative purpose of deterring criminal gang activity and therefore violates the principles of substantive due process.

Id. This court also concluded that the statute violated substantive due process principles because it "imposes mandatory punishment on an eligible defendant by imputing to him responsibility for the criminal activity of the gang as a collective without requiring the defendant's knowledge of and intent to promote such activity." Id. at *26; see also Scales v. United States, 367 U.S. 203, 224-25 (1961) ("In our jurisprudence guilt is personal, and when the imposition of punishment on a status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity . . . that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause.")

Upon review, we agree that Tennessee Code Annotated section 40-35-121(b) violates substantive due process principles. Without a requirement that the offense be related to the Defendant's criminal gang membership, we fail to comprehend how Tennessee Code Annotated section 40-35-121(b) is reasonably related to the goal of deterring criminal gang activity. The statute unconstitutionally abridges substantive due process.

### c. First Amendment

Next, the Defendant argues that Tennessee Code Annotated section 40-35-121 is overbroad and violates his First Amendment rights to freedom of expression and association. The Defendant contends that, because Tennessee Code Annotated section 40-35-121(b) "without showing that the charged crime is in any way related to the defendant's alleged gang affiliations[,]" the statute "criminalizes associations protected by the First Amendment by creating a penalty for exercising these constitutional rights." The State argues that the statute does not punish a criminal defendant simply for exercising his constitutional freedom of association. Instead, the State asserts that the statute punishes defendants who are members of a gang and commit a "criminal gang offense" as defined in the statute.

"A statute may be challenged as overbroad when it reaches a substantial amount of constitutionally protected conduct." Burkhart, 58 S.W.3d at 700 (citing Village of

Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982)). "A statute may be invalid on its face if it inhibits the exercise of First Amendment rights and if the 'impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep.'" Id. (quoting City of Chicago v. Morales, 527 U.S. 41, 55 (1999)) (internal quotation marks omitted). In order to show that a statute is overbroad, a defendant must first show that the statute involves constitutionally protected conduct. Id. "If the statute reaches a substantial amount of constitutionally protected conduct, a defendant must then 'demonstrate from the text of the law and actual fact that there as a substantial number of instances where the law cannot be applied constitutionally.'" Id. (quoting State v. Lyons, 802 S.W.2d 590, 593 (Tenn. 1990)).

The United States Supreme Court has recognized the "freedom of association" in two distinct lines of cases. Roberts v. United States Jaycees, 468 U.S. 609, 617 (1984). The first line of cases refers to a right of "intimate association." Id. at 618. "Intimate association" is the "choice to enter into and maintain certain intimate human relationships . . . ." Id. at 617-18. In the second line of cases, the United States Supreme Court recognized "expressive association" or "the right to association for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion." Id. at 618. However, the right to associate for expressive purposes is not absolute, and the government may infringe upon that right by way of "justifiable regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive associational freedoms." Id. at 623.

Turning to this case, contrary to the Defendant's assertions, Tennessee Code Annotated section 40-35-121 does not prohibit an individual from exercising his or her right of expressive association by joining a gang. Indeed, by the plain language of the statute, it cannot be applied to a defendant simply because the defendant was a member of a gang. Instead, the statute creates an enhanced punishment for defendants who commit one of the defined "criminal gang offenses" and who were also a member of a gang. Committing a criminal gang offense is not constitutionally protected conduct. See NAACP v. Claiborne Hardware Co., 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."); United States v. Chaidez, 916 F.2d 563, 564 (9th Cir. 1990) (drug trafficking is "not even arguably constitutionally protected."). Therefore, the statute does not reach a substantial amount of constitutionally protected conduct.

To the extent that the Defendant argues that the statute is overbroad because it does not require "showing that the charged crime is in any way related to the [D]efendant's alleged gang affiliations[,]" that argument is addressed above under the due process analysis. However, the Defendant's claim that Tennessee Code Annotated

section 40-35-121 violates his First Amendment rights to association and expression is without merit.

*Sufficiency of the Evidence*

Next the Defendant argues that there was insufficient evidence to support his convictions for sale and delivery of less than .5 grams of cocaine in a drug-free zone because the video of the drug transaction did not clearly show the intent of the parties involved. He contends that Officer Pate gave him twenty dollars in order to buy cocaine and that he intended to return with the drugs in order to smoke with Officer Pate. The Defendant asserts that this explanation of the transaction was "just as likely to have occurred" as the State's theory that the Defendant sold drugs to Officer Pate. The State contends that there is sufficient evidence to support the Defendant's convictions. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

Tennessee Code Annotated section 39-17-417(a) states, in pertinent part, "It is an offense for a defendant to knowingly . . . (2) [d]eliver a controlled substance; [or] (3) [s]ell a controlled substance." Cocaine is a Schedule II controlled substance. See Tenn. Code Ann. § 39-17-408(b)(4) (2010). The drug-free zone statute states:

> A violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary

- 13 -

school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-471(b)-(i) for such violation.

Tenn. Code Ann. § 39-17-432(b)(1) (2010).

In this case, the Defendant essentially asks us to make a credibility determination between his version of the transaction and Officer Pate's. Such credibility determinations are left to the trier of fact, and we will not reweigh or reevaluate the evidence on appeal. See Bland, 958 S.W.2d at 659. Further, the evidence presented at trial, viewed in a light most favorable to the State, shows that the Defendant approached Officer Pate's vehicle and learned that Officer Pate wanted twenty dollars' worth of crack cocaine. The Defendant then instructed Officer Pate to move to another location. The Defendant again approached Officer Pate's car, removed .08 grams of crack cocaine from a bag concealed in his pants, gave the cocaine to Officer Pate, took twenty dollars from Officer Pate, and walked away. This transaction took place within 1,000 feet of Knoxville Baptist Christian School and Kidz Inkorporated Preschool. The evidence was sufficient to support the Defendant's convictions for sale and delivery of less than .5 grams of cocaine within a drug-free zone.

However, we note that the record only contains judgments for Counts 1 and 5. The judgment for Count 1 includes a note in the "Special Conditions" box that "Counts 2, 3, and 4 merge into the conviction for Count 1." However, the record does not contain judgments for Counts 2, 3, and 4, and no sentences were imposed for those counts. Our supreme court has recently provided guidance as to the proper procedure for recording judgments of merged convictions. See State v. Marquize Berry, No. W2014-00785-SC-R11-CD, slip op. at 5 (Tenn. Nov. 16, 2015) (order granting Tenn. R. App. P. 11 application for appeal). On remand in this case, the trial court should impose sentences for Counts 2, 3, and 4 and enter judgments for each conviction. Then, the trial court should note in the "Special Conditions" box on the lesser (or merged) conviction that the conviction merges with the greater offense. Id. Additionally, the merger should be noted in the "Special Conditions" box of the greater conviction. Id.

### III. Conclusion

As the Defendant has not identified any error in the guilt phase of his trial, the Defendant's underlying convictions for sale and delivery of cocaine within a drug-free zone are affirmed. Further, we conclude that the Defendant has failed to show that Tennessee Code Annotated section 40-35-121 violates his rights to free association and expression under the First Amendment. However, because Tennessee Code Annotated section 40-35-121(b) violates substantive due process for lack of a nexus between the underlying offense and the Defendant's gang affiliation, the judgment in Count 5 is

- 14 -

reversed and dismissed, the judgment in Count 1 is modified to reflect a conviction for a Class B felony and to remove reference to the gang enhancement statute, and the Defendant's enhanced sentence for Count 1 is vacated. The case is remanded to the trial court for resentencing in Court 1 and for sentencing and entry of judgments in Counts 2, 3, and 4.

_____
ROBERT L. HOLLOWAY, JR., JUDGE