**STATE of Tennessee**

v.

**Rhonda BURKHART.**

Supreme Court of Tennessee,
at Nashville.

Oct. 10, 2001.

David S. Ardia, Washington, D.C. and
Robert Michael Friedman, Memphis, for
appellant, Rhonda Burkhart.

Paul G. Summers, Attorney General and
Reporter; Michael E. Moore, Solicitor
General; and Daryl J. Brand, Associate
Solicitor General, for appellee, State of
Tennessee.

## OPINION

HOLDER, J., delivered the opinion of
the court, in which DROWOTA, III, C.J.,
and ANDERSON, BIRCH, Jr., and
BARKER, JJ, joined.

We granted this appeal to determine the
constitutionality of Tenn.Code Ann. §§ 39–
17–501 and 39–17–505. We hold that
Tenn.Code Ann. §§ 39–17–501 and 39–17–
505 are neither unconstitutionally vague as
applied to this case nor overbroad and
therefore do not violate the guarantees of
due process provided by the Constitution
of the United States and the Constitution
of Tennessee. The judgment of the Court
of Criminal Appeals is affirmed.

## I. FACTS AND PROCEDURAL HISTORY

On January 10, 1997, Officer Raymond
Macias (Officer Macias) conducted an alco-
hol control inspection at the Pit Row Bar
in Clarksville, Tennessee. The bar was
owned by Rhonda Burkhart (Burkhart).
While performing the inspection of the
bar, Officer Macias discovered six video
slot machines known as One–Armed Ban-
dits, Cherrymasters, or Fevers. The ma-
chines were in a locked room near the rear
of the bar. The machines were plugged in
but were not being operated.

Each of the machines accepted paper
currency and coins. To operate a ma-
chine, a player would push a button. If
the appropriate sequence of symbols ap-
peared, the machine accumulated credits.
"Knock-off" switches and retention meters
inside the machines recorded the number
of games or credits won by the player.
The machines did not distribute monetary
winnings to players. A refund switch,
however, could be used to return money
that had been inserted. The player main-
tained no control over the results of the
game by using any skill. The settings
within the machines, however, could be
changed by the owner of the devices to
adjust the odds of winning. The machines
did not display amusement stickers.[1]

Officer Macias confiscated the machines.
Burkhart was then charged with posses-
sion of a gambling device in violation of
Tenn.Code Ann. § 39–17–505 (1989).
Burkhart filed a motion to dismiss the
charge, challenging the constitutionality of
Tenn.Code Ann. §§ 39–17–501 and 39–17–
505. The trial court granted the motion,

1. Section 67–4–507(b)(1)(A) of the Tennessee
Code Annotated requires that the owner of
coin-operated amusement devices pay a tax
for each such device maintained. Upon pay-
ment of the tax, the owner/operator is issued
a tax stamp, which must be placed on the
amusement device. Tenn.Code Ann. § 67–4–
507(c)(1989).

ruling that the statutes were so overly broad and unduly vague in proscribing "gambling devices" that application of Tenn.Code Ann. § 39–17–505 was unconstitutional. The Court of Criminal Appeals held the statutes constitutional and remanded the case to the trial court. We affirm the ruling of the intermediate court and hold that Tenn.Code Ann. §§ 39–17–501 and 39–17–505 are neither unconstitutionally vague as applied to this case nor overbroad.

## II. *VAGUENESS CHALLENGE TO A CRIMINAL STATUTE*

Burkhart challenges Tenn.Code Ann. §§ 39–17–505 and 39–17–501 as unconstitutionally vague. Section 39–17–505 reads in pertinent part:

> [A] person commits an offense who knowingly owns, manufactures, possesses, buys, sells, rents, leases, stores, repairs, transports, prints or makes any gambling device or record. However, it is not an offense for a person to own or possess in this state a lottery ticket originating from a state in which a lottery is lawful, if such ticket is not owned or possessed for the purpose of resale.

(1989) (amended effective July 1, 2001). Section 39–17–501 provides the following definitions for application in § 39–17–505:

> (1) "Gambling" means risking anything of value for a profit whose return is to any degree contingent on chance, but does not include a lawful business transaction; ...
>
> . . . .
>
> (3) "Gambling device or record" means anything designed for use in gambling, intended for use in gambling, or used for gambling;
>
> (4) "Lawful business transaction," as used in subdivision (1) includes any futures or commodities trading. . . .

(1989). Burkhart contends (1) that the definitions of "gambling device" and "gambling" are unconstitutionally vague as applied to her because they fail to provide sufficient notice that video slot machines are gambling devices; and (2) that the statutes are facially vague.

## III. *VAGUENESS OF SECTIONS 39–17–501 & 39–17–505 OF THE TENNESSEE CODE ANNOTATED AS APPLIED TO BURKHART*

A statute may be void for vagueness if it is not "sufficiently precise to put an individual on notice of prohibited activities." *State v. Wilkins,* 655 S.W.2d 914, 915 (Tenn.1983). A criminal statute must be construed according to the fair import of its terms when determining if it is vague. *See* Tenn.Code Ann. § 39–11–104 (1989). Due process requires that a statute provide "fair warning" and prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *see also State v. Lyons,* 802 S.W.2d 590, 591(Tenn.1990). The fair warning requirement, however, does not demand absolute precision in the drafting of criminal statutes. *See Wilkins,* 655 S.W.2d at 916. A statute is not vague "which by orderly processes of litigation can be rendered sufficiently definite and certain for purposes of judicial decision." *Id.* (quoting *Donathan v. McMinn County,* 187 Tenn. 220, 213 S.W.2d 173, 176 (1948)). Courts should consider any limiting instructions of the challenged statute that state authorities have proffered. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (citing *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294). In fact, it is the duty of the courts "to

adopt a construction which will sustain a statute and avoid constitutional conflict if its recitation permits such a construction." *Lyons,* 802 S.W.2d at 592.

■ Applying these standards to the statutes in question, we hold that §§ 39–17–501 and 39–17–505 are not unconstitutionally vague as applied to Burkhart because she engaged in conduct that is clearly proscribed by the statutes. A gambling device is defined as "anything designed for use in gambling, intended for use in gambling, or used for gambling." Tenn.Code Ann. § 39–17–501. This definition is sufficiently clear to provide notice that a slot machine is a gambling device.

A slot machine is designed for use in gambling and normally intended for use in gambling. The outcome of a game on Burkhart's machines is contingent upon chance. Skill is not required to play the slot machines. The confiscated machines were equipped with knock-off switches and retention meters. The number of games or credits won by the player could be recorded by the machines. The knock-off switch on the machines allowed credits won to be removed from the screen but remain recorded within the machine. Unlike standard arcade games, the settings on the slot machines could be changed to manipulate the odds of winning. The characteristics of the machines demonstrate their design for use in gambling.

Even if uncertainty existed as to whether slot machines are gambling devices under Tenn.Code Ann. § 39–17–501, it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952). A person who is aware of a possible application of the statute and nevertheless proceeds cannot complain of inadequate notice when arrested.

Indeed, an uncertain meaning should lead to citizens "steer[ing] far wider of the unlawful zone" than if the statute were more precise in the use of its language. *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

The legislative intent that the definition of "gambling devices" in Tenn.Code Ann. § 39–17–501 include slot machines is evidenced by the Sentencing Commission Comments to the statute. The legislature approved the publication of the Sentencing Commission Comments. *See* Tenn. Pub. Acts, ch. 591, § 114. The Comments are therefore evidence of legislative intent. *See State v. Horton,* 880 S.W.2d 732, 735 (Tenn.Crim.App.1994). The comments state that "[t]his section contains the definitions for gambling offenses. *The definitions are intentionally broader than those found in prior law."* (emphasis added). The pre–1989 statute definition of a "gambling device" states in pertinent part that

> [t]his definition shall not include any coin-operated game or device designed and manufactured for bona fide amusement purposes only, which may, by application of skill, entitle the player to replay the game at no additional cost if:
>
> (A) The game or device accumulates and reacts to no more than fifteen (15) free replays;
>
> (B) Discharges accumulated free replays only by reactivating the game or device for one (1) additional play for each accumulated free replay; and
>
> (C) Makes no permanent record, directly or indirectly, of free replays.

Tenn.Code Ann. § 39–6–601(4) (1982 repl.).

The language of the pre–1989 statute establishes that the legislature clearly intended that the definition of gambling device include slot machines like those owned by Burkhart. Reading the Sentencing

Commission Comments to Tenn.Code Ann. § 39–17–501 in conjunction with the pre–1989 statute shows that these machines continue to be gambling devices under the current statutes. Because the legislature intended the statutes to be broader than the prior statute, the new definition of gambling devices includes items deemed gambling devices in the previous statute and any other gambling devices that the previous statute may not have included. Burkhart, therefore, was clearly on notice that her slot machines were prohibited by the broader definition of a gambling device found in Tenn.Code Ann. § 39–17–501.

## IV. *FACIAL VAGUENESS OF SECTIONS 39–17–505 & 39–17–501 OF THE TENNESSEE CODE ANNOTATED*

■ Due process also provides that a criminal law may be facially vague if it authorizes and encourages arbitrary and discriminatory enforcement. *See City of Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion). A statute that provides "no legally fixed standards and leaves to 'personal predilections' of an officer, prosecutor, judge or jury the determination of the illegality of conduct" may be held vague on its face. *Lyons,* 802 S.W.2d at 591 (citing *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)). While law enforcement requires some degree of police judgment, a statute that "entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat" is unconstitutionally vague. *Goguen,* 415 U.S. at 575, 94 S.Ct. 1242. Therefore, in the absence of guidelines a law is impermissibly vague only if it "delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Davis–Kidd Booksellers, Inc. v.*

*McWherter,* 866 S.W.2d 520, 531 (Tenn. 1993) (citing *Grayned,* 408 U.S. at 114, 92 S.Ct. 2294).

■ Facial vagueness challenges, however, that implicate no constitutionally protected conduct should be sustained only if the statute is impermissibly vague in all its applications. *See Hoffman Estates,* 455 U.S. at 494–95, 102 S.Ct. 1186. A party who engages in conduct that is clearly proscribed by the statute cannot complain of the vagueness of the law as applied to others. *See id.* at 495, 102 S.Ct. 1186; *see also Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (holding that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). Courts should therefore examine the conduct of the moving party before analyzing hypothetical applications of the law. *See id.* In the absence of a facial infirmity, the Court will not consider "in advance of application all possible contingencies of attempted prosecution under a criminal statute, and declare which are constitutional and which are not." *State v. King,* 635 S.W.2d 113, 114 (Tenn.1982). The rationale for this requirement is that "to sustain such a challenge, the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *Hoffman Estates,* 455 U.S. at 495, n. 7, 102 S.Ct. 1186. (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971)).

■ Because the statutes are not vague as applied to Burkhart's possession of slot machines, we further hold that she may not successfully challenge the statutes as facially vague. She alleges that her conduct is not clearly proscribed by the

statutes because of contradictory interpretations of the statutes by law enforcement officials. In *Hoffman Estates*, the United States Supreme Court considered whether a drug paraphernalia ordinance was vague in light of testimony from various officials indicating confusion over the ordinance's application. 455 U.S. at 503, 102 S.Ct. 1186. The Court noted that the judgment of police officers was heavily relied upon to interpret and enforce the ordinance. *Id.* The Court, however, refused to rely upon these contradictory interpretations to find the ordinance vague, despite the Court's acknowledgment that the risk of discriminatory enforcement was not insignificant. *Id.* Critical to the Court's reasoning was the fact that no evidence was introduced establishing that the ordinance had actually been enforced in a discriminatory manner. *Id.* The Court therefore concluded that the ordinance was "sufficiently clear that the speculative danger of arbitrary enforcement [did] not render the ordinance void for vagueness." *Id.*

■ In this case, like *Hoffman Estates*, no evidence in the record suggests that the statutes have actually been enforced in an arbitrary or discriminatory manner. Burkhart offers several hypothetical situations to which the statute could be applied. However, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). The statutes are sufficiently clear and objective as applied to the present situation. Burkhart's speculations, therefore, do not support a facial attack on the statutes.

We will not consider in advance all possible contingencies of attempted prosecution under the statutes and determine which are constitutional. The statutes as applied to the machines that Burkhart possessed are constitutional. Therefore, Burkhart's facial vagueness challenge does not succeed. Accordingly, the vagueness challenges to Tenn.Code Ann. §§ 39–17–501 and 39–17–505 fail.

## V. OVERBREADTH CHALLENGE TO A CRIMINAL STATUTE

■ A statute may be challenged as overbroad when it reaches a substantial amount of constitutionally protected conduct. *Hoffman Estates, Inc.*, 455 U.S. at 494, 102 S.Ct. 1186. A statute may be invalid on its face if it inhibits the exercise of First Amendment rights and "if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *Morales*, 527 U.S. at 55, 119 S.Ct. 1849 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612–15, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). To maintain an overbreadth challenge, Burkhart must first show that the statute challenged involves constitutionally protected conduct. *See Hoffman Estates*, 455 U.S. at 494, 102 S.Ct. 1186. If the statute reaches a substantial amount of constitutionally protected conduct, a defendant must then "demonstrate from the text of the law and actual fact that there are a substantial number of instances where the law cannot be applied constitutionally." *Lyons*, 802 S.W.2d at 593.

■ Gambling or possessing a gambling device is not constitutionally protected conduct. The statutes, therefore, do not reach a substantial amount of constitutionally protected conduct. Burkhart alleges, however, that Tenn.Code Ann. §§ 39–17–501 and 39–17–505 violate freedom of speech under the First Amendment of the United States Constitution and Article I, § 19 of the Tennessee Constitution.

■ She asserts that the statutes prohibit the right to publish newsworthy in-

formation such as lottery numbers from adjacent states. Based upon the record, no evidence reveals that newspaper publishers or owners have been prohibited by Tenn.Code Ann. § 39–17–505 from publishing this information. Burkhart further does not allege that arrests have been made under Tenn.Code Ann. §§ 39–17–501 and 39–17–505 for such newspaper publications. Even if we were to find that Tenn. Code Ann. §§ 39–17–501 and 39–17–505 reach a substantial amount of constitutionally protected conduct, Burkhart has failed to "demonstrate from the text of the law and actual fact that there are a substantial number of instances where the law cannot be applied constitutionally." *Lyons*, 802 S.W.2d at 593 (Tenn.1990). The overbreadth challenge to the statutes is therefore without merit.

### CONCLUSION

Slot machines are gambling devices as defined by Tenn.Code Ann. §§ 39–17–501 and 39–17–505. The machines confiscated from Burkhart's place of business were slot machines. Burkhart, therefore, engaged in conduct clearly proscribed by the statutes. The statutes are not constitutionally vague as applied to her. Because Burkhart engaged in conduct clearly proscribed by the statutes, she cannot maintain a successful facial vagueness challenge to the statutes.

Sections 39–17–501 and 39–17–505 of the Tennessee Code Annotated do not reach a substantial amount of constitutionally protected conduct. The statutes, therefore, are not overbroad. The judgment of the Court of Criminal Appeals is affirmed. Costs of this appeal are taxed to Burkhart for which execution may issue if necessary.