IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 7, 2020 Session

**STATE OF TENNESSEE v. ROBERT COLLIER**

**Appeal from the Criminal Court for Shelby County**
**No. 18-07225          Jennifer Johnson Mitchell, Judge**
_____

**No. W2019-01985-CCA-R3-CD**
_____

On July 12, 2019, Defendant-Appellant, Robert Collier, entered a guilty plea to criminal attempt aggravated sexual battery and indecent exposure, for which he received an effective sentence of seven years, eleven months, and twenty-nine days, all of which was to be served on supervised probation.  Tenn. Code Ann. §§ 39-12-101, 39-13-504 (2019).  As part of his sentence, the Defendant was also ordered to register as a violent sex offender and placed on community supervision for life.  Tenn. Code Ann. § 39-13-524 (2014).  Within three months, on October 15, 2019, the trial court revoked the Defendant's supervised probation based on a violation of Tennessee Code Annotated section 40-39-211(d)(1)(B) (2019), which restricts movement of violent sex offenders, and ordered the Defendant to serve the original sentence in the Tennessee Department of Correction.  The Defendant now appeals the order of the trial court arguing that subsection (d)(1)(B) is unconstitutional in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution because certain terms including "playground," "any other specific or legitimate reason," "stand," "sit idly," and "remain" are not defined and "ambiguous."  He additionally argues that subsection (d)(1)(B) is overbroad in violation of his First Amendment rights because (1) it applies to all sex offenders even if the offense did not involve a child victim; and (2) the term "playground" can include a church, an offender's front yard, and places where other adults are present.[1]  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Phyllis Aluko, District Public Defender, and Barry W. Kuhn, Assistant Public Defender, for the Defendant-Appellant, Robert Collier.

---

[1] We have combined the Defendant's issues for clarity.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paige Munn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

As a Range II, multiple offender charged with criminal attempt aggravated sexual battery, a Class C felony, the Defendant was subject to a sentence range of six to twelve years. Tenn. Code Ann. §§ 39-12-101, 39-13-504, 40-35-106, 40-35-112. As outlined above, the Defendant entered a guilty plea to criminal attempt aggravated sexual battery and indecent exposure and was placed on supervised probation for seven years, eleven months, and twenty-nine days. The judgment forms reflect count one was nolle prosequi with no costs, registration as a violent sex offender, community supervision for life, and "out of range" was written in the special conditions box. On the same day of his guilty plea, the Defendant signed a Tennessee Department of Correction probation order agreeing to, among other things, "abide by the provisions of Community Supervision for Life, pursuant to [Tennessee Code Annotated section] 39-13-524."

On August 26, 2019, an arrest warrant for the Defendant was issued based upon an affidavit from Laquita Hampton, the Defendant's probation officer, alleging that the Defendant had violated his probation. The affidavit specifically alleged as follows:

Count 1: [The Defendant] violated Rule #1 in that on or about August 17, 2019, complainant called for Officer(s) out of concern for the children that were present at the business. Officer(s) made contact with [the Defendant] and co-defendant who were both sitting next door to the indoor playground where approximately three children actively playing. [The Defendant] was arrested for being 1000 feet of a playground w[h]ere children under the age of 15 were present. [The Defendant] was transported to Felony Response Bureau and charged[.]

Count 2: [The Defendant] violated Rule #1 in that on or about August 16, 2019, complainant called for Officer(s) out of concern for the children that were [p]resent at the business. Officer(s) made contact with [the Defendant] and co-defendant who were both sitting next door to the indoor playground where approximately three children actively playing. [The Defendant] was caught on camera August 15, 2019 inside of the playground area.[2]

---

[2] While the affidavit alleges prohibited conduct that occurred on two separate days, August 16, 2019, and August 17, 2019, the proof at the revocation hearing was limited to August 17, 2019.

The Defendant was arrested, and the State filed a petition for revocation of suspension of sentence on August 26, 2019. The petition alleged the same grounds as relied upon in the affidavit; however, it further alleged that following the Defendant's arrest from the McDonald's restaurant, the Defendant failed to report the matter to his probation officer upon release from custody.

The Defendant was appointed counsel, and a hearing in this matter was conducted on October 14, 2019. The Defendant's probation officer, Shunta Lowery, testified that she no longer supervised the Defendant, and she had only met him twice during her supervision. She said the Defendant's probation was violated based on a new arrest; specifically, a violation of the sex offender registry. On cross-examination, she identified the Tennessee Bureau of Investigation Sex Offender Registry Rules (SOR), admitted as an exhibit, which are given to "new intakes when they come in to learn their terms of the sex offender conditions." She explained the SOR includes "copies of the law" and global positioning system (GPS) monitoring; however, "[GPS] doesn't specify exactly like their boundaries." Although she was not the intake officer for the Defendant, Lowery agreed that it was standard office policy to "go over," read, and explain each rule with each probationer. She agreed she had never told a probationer "not [] to be at certain restaurants[.]"

She clarified that the Defendant was placed on GPS monitoring on the day of intake as part of his probation. Each probationer is required to be placed on GPS for at least 90 days, and GPS tracks their whereabouts including public schools, parks, or daycare centers. A probationer's presence at a playground would trigger the GPS, and the control center would then call the probation officer. The GPS system does not "light up" or alert the offender of the violation. Instead, the probation officer notifies the probationer. Lowery's office does not maintain a physical list of state parks or locations because this information was "already inside" the tracking system. She reviewed the Defendant's GPS report at the time of his arrest, and it did not register any alerts. Lowery confirmed that the GPS system would not alert on a park that was not "state mandated."

On redirect examination, Lowery testified that she was "on call" at the time of the Defendant's arrest, and the call center did not inform her of his location. She believed this may have occurred because the Defendant was at a restaurant with an attached playground. She nevertheless insisted that the Defendant would have been instructed at intake "not to remain within a thousand feet of children" who were not his own. On re-cross examination, Lowery agreed that the "statute" does not explicitly require defendants to be "within a certain distance" of children. The trial court asked for clarification regarding her understanding of the law, and Lowery affirmed that areas that are not "state mandated,"

like churches, are not included in the GPS system because they may not include playgrounds.

Officer Michael Gibbs testified that he was working on August 17, 2019, and responded to a call from a manager at a McDonald's restaurant in Memphis, Tennessee. Upon arrival, he spoke with the manager, identified the Defendant and the individual he was seated with, and asked for their identification. Officer Gibbs confirmed the Defendant and his "co-defendant" were violent sex offenders. Officer Gibbs described the area where the Defendant was sitting as "right next to a glass partition that was backed up to a McDonald's playground." The glass partition separated the play area from the rest of the restaurant. Officer Gibbs testified that, from the Defendant's vantage point, a person could see children at play. Officer Gibbs approached the Defendant, who then asked "am I not supposed to be here [?]" The entire encounter was captured on the body camera of Officer Gibbs, which was played for the trial court and later entered as an exhibit. After consulting a supervisor, Officer Gibbs placed the Defendant under arrest.

On cross-examination, Officer Gibbs confirmed that the manager reported that the Defendant had been eating at the restaurant. Officer Gibbs observed food on the table when he approached the Defendant. On redirect examination, Officer Gibbs testified that children were playing on the playground while the Defendant was at the restaurant. The parties stipulated that the McDonald's restaurant is located in Memphis, Tennessee, and is a privately-owned fast food restaurant operated for the purposes of generating a profit. The parties further agreed that the McDonald's has a surveillance system; however, the footage from August 16, 2019, and August 17, 2019, was not preserved.

Lieutenant Israel Taylor of the Memphis Police Department (MPD) testified on behalf of the Defendant. Lieutenant Taylor was the field supervisor who responded to the McDonald's and advised the officers on the scene on the appropriate charges in this case. He agreed that he initially had a question about the public versus private language in the "statute;" however, after consulting Felony Response and the Sex Crimes Bureau, he charged the Defendant with the instant violation. Portions of his body camera showing the discussion between the officers were played for the trial court and admitted into evidence. On cross examination, Lt. Taylor agreed the McDonald's restaurant was "open to the public" and "anybody can take their kids up there and play on the playground[.]" On redirect examination, Lt. Taylor agreed the McDonald's restaurant was a privately-owned business.

Following argument of the parties, the trial court determined that the Defendant had violated the terms and conditions of his probation and ordered execution of the original sentence, plus jail credit. The Defendant filed a timely notice of appeal, and his case is now properly before this court for review.

# ANALYSIS

The Defendant's base contention is that the evidence presented to the trial court was insufficient to show that he violated his probation. However, he does not contest that he was at a McDonald's restaurant with an attached playground with children present as alleged in the violation warrant and established at the revocation hearing. Accordingly, the relevant facts are not in dispute, and we will address only legal issues in this appeal. Our review of legal questions is de novo, affording no presumption of correctness to the determination of the trial court. State v. Frazier, 558 S.W.3d 145, 152 (Tenn. 2018).

The Defendant argues his conduct does not amount to a violation of Tennessee Code Annotated section 40-39-211(d)(1)(B), which prohibits violent sexual offenders from "stand[ing], sit[ting] idly . . . or remain[ing] within one thousand feet (1,000′) of the property line of any . . . playground, recreation center or public athletic field available for use by the general public in this state when children under eighteen (18) years of age are present, while not having . . . any other specific or legitimate reason for being there[.]" The Defendant points out that subsection (d)(1)(B) does not provide a definition for the term "playground" and the phrase "any other specific or legitimate reason [.]" He applies the definition of playground from subsection (a)(2), which excludes an offender from publicly-owned properties only, and insists that he did not violate the terms of his probation because the McDonald's playground was privately-owned property. The Defendant maintains that if the definition of playground under subsection (a)(2) does not apply to subsection (d)(1)(B), then the term "playground" must be construed as ambiguous. He invokes the rule of lenity and argues subsection (d)(1)(B) should be interpreted in his favor. See United States v. Santos, 553 U.S. 507, 514 (2008). He further contends that he did not violate subsection (d)(1)(B) because eating lunch constitutes a legitimate reason to stay near a restaurant playground. As part of this argument, the Defendant claims the phrase "any other specific or legitimate reason" is also ill-defined and vague in violation of due process. Finally, while not entirely clear, the Defendant appears to argue that subsection (d)(1)(B) is overbroad in violation of the First Amendment because (1) the front of his home could be "playground" within the meaning of the statute; (2) attending church would be prohibited under the statute; and (3) "any offender would be prohibited from being near a playground even if his offense were committed against an adult."

In response, the State contends the Defendant's conduct was clearly proscribed by the statute. The State concedes that "playground" is not defined for purposes of subsection (d)(1)(B). Nevertheless, applying the ordinary and common meaning of the word, the State argues "playground" includes "an indoor play area designed for children's recreation, such as the McDonald's indoor play area" in this case. The State further points out that "playground" in subsection (a)(1) is narrowly defined to include only playgrounds "owned

by the state, a local government, or a not-for-profit organization[.]" <u>See</u> Tenn. Code Ann. § 40-39-211(a)(2) (2019). The State argues that the legislature could have easily applied the narrow definition of playground in subsection (a)(1) to the entire statute, but it chose not to do so. Following the canon of statutory construction *expression unius est exclusion alterius*, the State posits "it can be presumed that the legislature intended the narrow definition of playground—only a publicly owned playground—to apply only to subsection (a)(1) and that the ordinary and common meaning of the word—a play area intended for children's recreation, without consideration of its ownership-would apply to the remainder of the statute." The State argues the rule of lenity does not apply because the Defendant "has attempted to create an ambiguity by presenting an interpretation of 'playground' that is clearly erroneous." Regarding the phrase, "any other specific or legitimate reason," the State argues the Defendant is similarly not entitled to relief. Here, under the statutory construction doctrine of *ejusdem generis*, the State explains that the phrase "any other specific or legitimate reason" is broad and general but not ambiguous. The phrase follows a specific exception under the statute for child-care responsibilities, and the State argues "the specific and legitimate reasons" should be similar to the child-care exception, which is based on an offender's relationship and/or duty to be in the excluded location. Because the Defendant had no such duty to remain at the McDonald's, the exception does not apply here. Finally, the State argues the Defendant has waived the portion of his overbreadth challenge to subsection (d)(1)(B) regarding its reach to sex offenders with adult victims for failure to present it to the trial court. And, to the extent the Defendant argues that the term "playground" includes churches or playgrounds where other adults are present, the State argues the Defendant has failed to demonstrate that the statute inhibits a substantial amount of constitutionally protected conduct or that there are a substantial number of instances where the law cannot be applied constitutionally. <u>See</u> <u>State v. Burkhart</u>, 58 S.W.3d 694, 700 (Tenn. 2001).

"In resolving questions of statutory construction, we are guided by the following 'well-defined precepts.'" <u>Frazier</u>, 558 S.W.3d at 152 (citing <u>Tenn. Dep't of Corr. v. Pressley</u>, 528 S.W.3d 506, 512 (Tenn. 2017); quoting <u>State v. Howard</u>, 504 S.W.3d 260, 269 (Tenn. 2016) (footnote omitted)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." <u>Howard</u>, 504 S.W.3d at 269 (quoting <u>Owens v. State</u>, 908 S.W.2d 923, 926 (Tenn. 1995)). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional," and "indulge every presumption and resolve every doubt in favor of the statute's constitutionality." <u>Gallaher v. Elam</u>, 104 S.W.3d 455, 459 (Tenn. 2003) (citations omitted); <u>State v. Taylor</u>, 70 S.W.3d 717, 721 (Tenn. 2002). "When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use." <u>Eastman Chem. Co. v. Johnson</u>, 151 S.W.3d 503, 507 (Tenn. 2004). A statute is ambiguous when "the parties derive different interpretations from the statutory

language." Howard, 504 S.W.3d at 270 (quoting Owens v. State, 908 S.W.2d at 926). However, "[t]his proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of a statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute." Powers v. State, 343 S.W.3d 36, 50 n.20 (Tenn. 2011). In other words, both interpretations must be reasonable in order for an ambiguity to exist. Id. If an ambiguity exists, however, "we may reference the broader statutory scheme, the history of the legislation, or other sources" to determine the statute's meaning. State v. Frazier, 558 S.W.3d 145, 152-53 (Tenn. 2018) (internal citations omitted).

Tennessee Code Annotated section 40-39-211, a Class E felony, sets forth the parameters for sex offenders and violent sex offenders to establish residence or accept employment. It also provides the grounds for violations of the statute. Subsection (a) specifically addresses residency and employment and states:

> (a)(1) While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202, or violent sexual offender as defined in § 40-39-202, shall knowingly establish a primary or secondary residence or any other living accommodation or knowingly accept employment within one thousand feet (1,000′) of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center, or public athletic field available for use by the general public.

> (2) For purposes of this subsection (a), "playground" means any indoor or outdoor facility that is intended for recreation of children and owned by the state, a local government, or a not-for-profit organization, and includes any parking lot appurtenant to the indoor or outdoor facility.

While subsection (a) restricts residency and employment of sex offenders, subsection (d)(1) restricts their movement and provides as follows:

> (d)(1) No sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall knowingly:

> (A) Be upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present;

- 7 -

(B) Stand, sit idly, whether or not the offender is in a vehicle, or remain within one thousand feet (1,000′) of the property line of any building owned or operated by any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there[.]

**I.** **Fourteenth Amendment.** The Fourteenth Amendment to the United States Constitution guarantees dues process against state action and provides, in relevant part, that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Defendant challenges subsection (d)(1)(B) as "ambiguous" in violation of due process because neither the term "playground" nor the phrase "any other specific or legitimate reason for being there" are defined. The Defendant also asserts that several other statutory terms—including "stand," "sit idly," and "remain"—are so unclear that neither individuals nor law enforcement officers can ascertain when the statute applies. We must initially observe that while the Defendant addresses the unconstitutionality of Tennessee Code Annotated section 40-39-211(d)(1)(B) on various grounds throughout his brief, he does not denote whether he has lodged a facial or "as-applied" challenge to the statute. Presented in this posture, we are constrained to analyze his vagueness claim as applied to the particular circumstances of his case. See State v. Crank, 468 S.W.3d 15, 25 n.5 (Tenn. 2015) (distinguishing between "a facial challenge, which involves the constitutionality of the statute as written, [and] '[a]n 'as applied' challenge to the constitutionality of a statute [which] is evaluated considering how it operates in practice against the particular litigant and under the facts of the instant case, not hypothetical facts in other situations'").

When determining the constitutionality of claims under the vagueness doctrine, we apply the following legal framework:

> "'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" State v. Pickett, 211 S.W.3d 696, 704 (Tenn. 2007) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). By virtue of the Due Process Clause of the Fourteenth Amendment to the Federal Constitution and article I, section 8 of the Tennessee Constitution, a criminal statute cannot be enforced when it prohibits conduct "'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" Id. (quoting Leech v. Am. Booksellers Ass'n, 582 S.W.2d

738, 746 (Tenn. 1979)). The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not "held criminally responsible for conduct which [they] could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). In evaluating whether a statute provides fair warning, the determinative inquiry "is whether [the] statute's 'prohibitions are not clearly defined and are susceptible to different interpretations as to what conduct is actually proscribed.'" Pickett, 211 S.W.3d at 704 (quoting State v. Forbes, 918 S.W.2d 431, 447-48 (Tenn. Crim. App. 1995)); see also State v. Whitehead, 43 S.W.3d 921, 928 (Tenn. Crim. App. 2000).

. . . .

Despite the importance of these constitutional protections, this Court has recognized the "inherent vagueness" of statutory language, Pickett, 211 S.W.3d at 704, and has held that criminal statutes do not have to meet the unattainable standard of "absolute precision," State v. McDonald, 534 S.W.2d 650, 651 (Tenn. 1976); see also State v. Lyons, 802 S.W.2d 590, 592 (Tenn. 1990) ("The vagueness doctrine does not invalidate every statute which a reviewing court believes could have been drafted with greater precision, especially in light of the inherent vagueness of many English words."). In evaluating a statute for vagueness, courts may consider the plain meaning of the statutory terms, the legislative history, and prior judicial interpretations of the statutory language. See Lyons, 802 S.W.2d at 592 (reviewing prior judicial interpretations of similar statutory language); Smith, 48 S.W.3d at 168 ("The clarity in meaning required by due process may ... be derived from legislative history.").

Crank, 468 S.W.3d at 22-23.

**A. "Playground."** The Defendant correctly observes that the term "playground" is not defined in subsection (d)(1)(B). Subsection (a)(2) defines "playground" as "any indoor or outdoor facility that is intended for recreation of children and owned by the state, a local government, or a not-for-profit organization." However, subsection (a)(2) begins with the limiting clause, "For purposes of this subsection (a)," and therefore expressly provides a definition for playground for subsection (a) only. "The canon of statutory construction *expressio unius est exclusio alterius* provides that where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded." State v. Welch, 595 S.W.3d 615, 623 (Tenn. 2020); State v. Loden, 920 S.W.2d 261, 265 (Tenn. Crim. App. 1995). Accordingly, we agree with the State, and

conclude that the definition of playground in subsection (a)(2) is limited to subsection (a) of the statute.

Alternatively, the Defendant contends that if the definition of playground in subsection (a)(2) does not extend to subsection (d)(1)(B), then the rule of lenity requires that the term be narrowly construed in his favor. We disagree. "The rule of lenity is 'rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his or her conduct is prohibited.'" State v. Hawkins, 406 S.W.3d 121, 137-38 (Tenn. 2013) (quoting State v. Marshall, 319 S.W.3d 558, 563 (Tenn. 2010)). Where there is ambiguity in a statue, the rule of lenity requires the ambiguity to be resolved in favor of a defendant. State v. Smith, 436 S.W.3d 751, 768 (Tenn. 2014). "The rule of lenity has been described as a 'tie-breaker' for a defendant in the event of an unresolved ambiguity in a statute, but resorting to the rule first necessitates a 'grievous ambiguity or uncertainty' in the statute." Welch, 595 S.W.3d at 623 n.4 (internal citations omitted). We see no tie breaker here. The word "playground" has common and ordinary meaning. Merriam-Webster defines "playground" as "a piece of land used for and usually equipped with facilities for recreation especially by children." *Playground*, Merriam-Webster's Dictionary (2019). Utilizing the common understanding and plain meaning of the word "playground," we conclude that subsection (d)(1)(B) does not "prohibit[ ] conduct 'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" Crank, 468 S.W.3d at 22 (quoting State v. Pickett, 211 S.W.3d 696, 704 (Tenn. 2007)). The Defendant is not entitled to relief on this ground.

**B. "Any Other Specific or Legitimate Reason."** The Defendant also challenges subsection (d)(1)(B) as vague based on the phrase "any other specific or legitimate reason." He claims he did not violate the terms of his probation because eating lunch at McDonald's is in fact a "specific or legitimate reason." Once again, the Defendant correctly observes that this phrase is not defined within the statute. As previously mentioned, this portion of subsection (d)(1)(B) prohibits a sex offender's presence in any of the excluded zones unless he has "a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there[.]" With little to no argument or analysis as to how they apply here, the Defendant cites a handful of cases, Morales v. City of Chicago, 527 U.S. 41, 64 (1999) (Morales), Kolender v. Lawson, 461 U.S. 352, 360 (1983) (Kolender), and Doe v. Haslam, No. 3:16-CV-02862, 2017 WL 5187117 (M.D. Tenn. Nov. 11, 2017) (Doe), for the proposition that the phrase "any other specific or legitimate reason" is open to arbitrary enforcement by law enforcement as evidenced by Lt. Taylor's discussion with the responding officers and their subsequent confusion concerning the statute. In drafting subsection (d)(1)(B), the Defendant suggests that the legislature has failed to establish minimum guidelines to govern law enforcement. We disagree.

As an initial matter, <u>Doe</u> is of no benefit to the Defendant.  In that case, the plaintiffs, both convicted sex offenders subject to the Tennessee sex offender registry, filed suit against the State of Tennessee, the Governor, and the Tennessee Bureau of Investigation in their official capacity alleging, among other things, that certain provisions of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act ("Act") were unconstitutional in violation of the vagueness doctrine.  Specifically, with regard to subsection (d)(1)(B), plaintiffs argued "the extensive and ever-shifting nature of the Exclusion Zones violate[] due process by (1) failing to give a person of ordinary intelligence fair notice of the conduct punished (Count 8); and (2) imposing requirements that are functionally impossible (Count 9).  <u>Doe</u>, 2017 WL 5187117, at *18.  Defendants argued, however, "that the Act's Exclusion Zones [were] constitutionally sound because the formula for identifying Exclusion Zones [was] well-defined and the Act clearly stated which actions were prohibited therein."  In its memorandum opinion denying the defendant's motion to dismiss as to this claim, the district court stated:

> At least one aspect of the Exclusion Zones, however, is far less clear than Defendants contend.  Tenn. Code Ann. § 40-39-211(d)(1)(B) provides that a registered offender cannot knowingly "[s]tand, sit idly, whether or not the offender is in a vehicle, or remain within" an Exclusion Zone.  It is unclear to the Court where the line would be drawn between standing or sitting idly versus standing or sitting non-idly.  Defendants suggest that "idly" means "for no apparent reason," but it is not clear to the Court why it matters that the reason be apparent, or to whom.  Nor is it clear what relationship there must be between the required apparent reason and the registered offender's presence in the Exclusion Zone.  Does the offender need an apparent reason to be standing or sitting, or an apparent reason for standing or sitting in that particular spot?  And how long must a registered offender be in the Zone before he is considered idle, rather than passing through?  The prohibitions placed on Plaintiffs are sufficiently unclear on their face that the Court will not dismiss Count 8 outright.

Upon a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court in <u>Doe</u> was charged with determining only whether "the claimant [was] entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).  As such, the district court's inquiries as cited by the Defendant hold no force.  Moreover, <u>Doe</u> did not subject the statute to any constitutional analysis, and the case remained pending on the docket for the Middle District of Tennessee upon release of our opinion in this appeal.

In Kolender, the pro se plaintiff, an African American male, was detained approximately fifteen times in less than a two-year period as a pedestrian or as a diner in a cafe, and he was asked to present identification; some detentions lasted minutes, while others lasted hours. He was also arrested several times pursuant to a California criminal loitering statute, but prosecuted only twice, with one resulting conviction (the second charge was dismissed). The United States Supreme Court considered a vagueness challenge to the loitering statute which "require[d] persons who loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a peace officer under circumstances that would justify a [Terry] stop." Kolender v. Lawson, 461 U.S. 352, 353 (1983). The statute was challenged because it "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect ha[d] satisfied the statute." Id. at 358. The Court noted that "as presently drafted and construed ..., [the statute] contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification." Id. The Court reasoned the statute "furnish[ed] a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." Id. (internal quotation marks omitted). The Court held the statute was "unconstitutionally vague ... because it encourage[d] arbitrary enforcement." Id. at 361.

In Morales, the United States Supreme Court considered a vagueness challenge to a Chicago anti-gang loitering ordinance. A violation would occur if the following took place. First, a police officer had to reasonably believe that at least one of two or more persons present in a "public place" was a member of a "criminal street gang." Second, the persons had to be "loitering," which the ordinance defined as "remain[ing] in any one place with no apparent purpose." Third, the officer had to then order all of the persons to "disperse" and remove themselves "from the area." Fourth, a person had to disobey the officer's order. If any person, whether a gang member or not, disobeyed the officer's order, that person would be guilty of violating the ordinance. Morales v. City of Chicago, 527 U.S. 41, 47 (1999) (internal quotation marks omitted).

A majority of the Court held that the ordinance was unconstitutionally vague because it failed to establish adequate guidelines to govern the enforcement and application of the law. Id. at 56, 60. In particular, the Court held that the "no apparent purpose" definition of loitering was unconstitutionally vague. The Court concluded that this standard was "inherently subjective because its application depends on whether some purpose is 'apparent' to the officer on the scene." Morales, 527 U.S. at 62. The Court also found it significant that Chicago's ordinance did not require any showing that the loitering had a harmful purpose, id. at 62 (Stevens, J. plurality), and a majority of the court stated the ordinance would meet constitutional standards if it applied only to loitering with such a purpose. The ordinance, therefore, conferred an arbitrary and, thus, unconstitutional

- 12 -

authority on law enforcement officers to determine what activities constituted loitering. Id. at 61.

While subsection (d)(1)(B) does not use the word "loiter" expressly, "loitering" has been commonly defined as "to stand or wait around idly or without apparent purpose" and "[t]o be slow in moving, to delay; to linger; to be dilatory; to spend time idly; to saunter; to lag behind." Metro. Gov't of Nashville & Davidson Cty. v. Martin, 584 S.W.2d 643, 646 (Tenn. 1979); McCoy v. State, 466 S.W.2d 540, 542 (Tenn. Crim. App. 1971). Replacing the word "loitering" with the common definition of the same word does insulate or "defang" the statute. See Doe v. Snyder, 101 F. Supp.3d 672 (E.D. Mich. 2015) (definition of term "loiter" irrespective of knowledge requirement was unconstitutionally vague under Michigan Sex Offender Act). Our research has also revealed cases in which other courts have sustained vagueness challenges to statutes with similar language as subsection (d)(1)(B), which lends some credence to the Defendant's ambiguity claim. See e.g., Doe v. Cooper, 842 F.3d 833, 844 (4th Cir. 2016) (finding unconstitutionally vague and overly broad a North Carolina law forbidding sexual offenders from knowingly being within 300 feet of a place where minors gather for scheduled educational, recreational, or social programs); Valenti v. Hartford Cty., Indiana, 225 F. Supp. 3d 770, 785 (N.D. Ind. 2016) (finding unconstitutionally vague Indiana law because there was no indication of how long a person must be standing or sitting, or remaining in an area and statute failed to sufficiently define the line between prohibited and permissible conduct). We will therefore review the Defendant's claim in the context of loitering laws.

First, we employ as an aid the doctrine of statutory construction *ejusdem generis*, which means "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." Sallee v. Barnett, 171 S.W.3d 822, 829 (Tenn. 2005) (internal citations omitted). "'[W]here it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class.'" Id. (internal citations omitted). The statutory language at issue here follows an exception to the exclusionary zones identified in subsection (d)(1)(B). The exception specifically demonstrates the legislature's intent to permit a sex offender to be present in an excluded zone based on his duty or responsibility for a child. Applying *ejusdem generis*, it follows that "any other specific or legitimate reason" should not embrace anything other than matters related to a sex offender's legitimate duties or responsibilities. See e.g., Tenn. Op. Att'y Gen. No. 16-35, 2016 WL 4698880 (Aug. 30, 2016) (noting that the "grammatical structure makes clear that the General Assembly recognized the potential need for some reasonable exceptions in addition to the child care exception while also recognizing that it could not foresee—and therefore could not specifically enumerate—every possible exception" and reasoning that "the general phrase may be understood to allow for an exception when the sex offender has

- 13 -

a reason to be in the prohibited area related to his legitimate, cognizable responsibilities, duties, or obligations").

Applying the above construction, an ordinary person would understand that choosing to "remain within" one thousand feet of a playground where minor children are present, whether eating or not, is not a specific or legitimate reason for being there as proscribed by subsection (d)(1)(B). We further conclude that subsection (d)(1)(B) does not run afoul of Kolender and Morales. It is limited in scope and only applies to individuals required to register as sex offenders in Tennessee. While there is no express temporal element, the offense is triggered only *"when children under eighteen (18) years of age are present"*[3] and in certain identified excluded zones. By anchoring subsection (d)(1)(B) in the requirement that minor children be present in the excluded zone, the Tennessee legislature narrowed the reach of subsection (d)(1)(B) to conduct that has an "apparent harmful purpose or effect." See State v. Stark, 802 N.W.2d 165, 171 (S.D. 2011) (citing Morales v. City of Chicago, 527 U.S. 41, 62-63 (1999)). The harmful purpose presumably remains rooted in the high risk of recidivism posed by sex offenders upon reentry into society. Compare McKune v. Lile, 536 U.S. 24, 33-34 (2002) (establishing, based on Department of Justice statistics, that sex offenders are "more likely than any other type of offender to be rearrested") with Does #1-5 v. Snyder, 834 F.3d 696, 704 (6th Cir. 2016) (finding retroactive application of amendments to Michigan SORA violated Ex Post Facto clause based in part on evidence in the record casting doubt on McKune). Based on the record before us, rather than "vest[ing] virtually complete discretion in the hands of police[,]" subsection (d)(1)(B) provides clear standards for enforcement and fair warning as to the nature of forbidden conduct. Accordingly, the trial court properly rejected the Defendant's vagueness challenge and revoked his probation for failure to comply with Tennessee Code Annotated section 40-39-211(d)(1)(B).

**II. First Amendment:** The First Amendment to the United States Constitution provides, in relevant part, that "[c]ongress shall make no law respecting an establishment of religion, or prohibiting the exercise thereof." U.S. Const. amend. I. The Defendant asserts that Tennessee Code Annotated 40-39-211(d)(1)(B) is overbroad and impermissibly interferes with his First Amendment rights because (1) it applies to all sex offenders even if the original offense did not involve a child victim; and (2) the term "playground" can include a church, an offender's front yard, and places where other adults are present. The Defendant frames this issue on behalf of third parties; thus, we review this aspect of his appeal as a facial challenge to the constitutionality of subsection (d)(1)(B). See United States v. Salerno, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative

---

[3] Various sections of the statute provide exceptions for minor children who are related to an offender. See Tenn. Code Ann. § 40-39-211(c)(1), (d)(2)(B), (d)(2)(D).

[a]ct is . . . the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exist under which the Act would be valid.").

The Defendant's brief first argues that the statute is overbroad because "it applies to all offenders, whether or not children were involved in the offense." We are unable to address this precise issue because it was not raised before the trial court. Even if we were inclined to do so, the Defendant would not be entitled to relief because of the undeveloped record on this issue, and we decline the Defendant's invitation from oral argument to remand. As to the remaining issues, the State argues that the Defendant has failed to demonstrate that the statute inhibits a substantial amount of constitutionally protected conduct. We agree with the State.

When reviewing a facial challenge to the overbreadth of a statute, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Vill. Of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982). If the court determines that the statute does not, "then the overbreadth challenge must fail." Id. In the context of First Amendment rights, "the overbreadth doctrine permits the facial invalidation of laws . . . if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" Morales v. City of Chicago, 527 U.S. 41, 52 (1999) (quoting Broadrick v. Oklahoma, 423 U.S. 601, 612-15 (1973)). To maintain an overbreadth challenge, a defendant must first show that the statute challenged involves constitutionally protected conduct. State v. Burkhart, 58 S.W.3d 694, 700 (Tenn. 2001). If the statute reaches a substantial amount of constitutionally protected conduct, a defendant must then "demonstrate from the text of the law and actual fact that there are a substantial number of instances where the law cannot be applied constitutionally. Id. (citing State v. Lyons, 802 S.W.2d 590, 593 (Tenn. 1990)).

Here, the Defendant argues that the statute is overbroad because if "playground" includes both public and private playgrounds, the statute would prevent the Defendant from attending church services, as most churches have a playground. Under the most liberal interpretation, we view this as a Free Exercise Clause claim. The Free Exercise Clause does not protect all conduct associated with religious practice. The clause "embraces two concepts, [] freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." Cantwell v. State of Connecticut, 310 U.S. 296, 303-04 (1940). "The freedom to act must have [an] appropriate definition to preserve the enforcement of that protection." Id. at 304. The Defendant remains free to hold whatever beliefs he may choose and privately practice religion as he wishes. However, the Defendant cannot attend churches with playgrounds or other similar statutorily prohibited zones. The State's "paramount" interest in "protect[ing] the public from [sexual] offenders" allows it to "define" and limit

- 15 -

the extent of the Defendant's "freedom to act." Tenn. Code Ann. § 40-39-201 (2020); Id. at 303-04.

Second, the Defendant argues that the State's definition of "playground" is so broad that it encompasses anywhere that children play. The Defendant argues that he could violate his probation if children choose to play in his front yard. Citing Fla. Action Comm., Inc. v. Seminole Cty., 212 F. Supp. 3d 1213, 1219 (M.D. Fla. 2016), the Defendant is apparently arguing that the statute also infringes upon his freedom of association. We disagree with the Defendant's reading of subsection (d)(1)(B). To be clear, the exclusionary zones applicable to the Defendant's residence under subsection (a)(1) are narrowly tailored to prohibit the Defendant from living within one thousand feet of a playground owned by the state or otherwise defined by subsection (a)(2). In contrast, subsection (d)(1)(B) prohibits an offender from knowingly "stand[ing]," "sit[ting] idly, "or remain[ing]" within one thousand feet (1,000′) of a playground where minor children are present. Under its common meaning and understanding, a playground is a place *designed* for children to play on or in, not any place where children may gather to play as suggested by the Defendant. The mens rea of knowingly avoids the accidental scenarios posed by the Defendant. See McFadden v. United States, 576 U.S. 186, 187 (2015) (quoting Gonzales v. Carhart, 550 U.S. 124, 149 (2007)); See Doe v. Raush, No. 3:17-CV-504, 2020 WL 2495805 (E.D. Tenn. May 14, 2020) (rejecting vagueness challenge to subsection (d)(1)(B) because the scienter requirement- *knowledge*- supported the statute's constitutionally and plaintiff's claim based on hypotheticals, not proof). Accordingly, the Defendant has failed to show that Tennessee Code Annotated section 40-39-211(d)(1)(B) is overbroad and reaches a substantial amount of constitutionally protected conduct, and his constitutional claim must fail.

## CONCLUSION

Discerning no error, the judgments of the trial court are affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE